IN ERROR.
......

ALBANY,
March, 1812.

WATERS
v.
TRAVIS.

THOMAS WATERS,          *Appellant,*

*against*

EZEKIEL TRAVIS,          *Respondent.*

A court of equity will compel a vendor to a specific performance of a contract for the sale of land, for a part of the land, where he has incapacitated himself from conveying the whole.

And where the land contracted to be sold was held in common, and the vendor, after the agreement, divided with the other tenants in common, and executed a deed of partition, it was held that the partition was no objection to a specific performance, where the party was capable of performing the whole; but there is a

THE respondent, on the 17th *July*, 1802, filed a bill in the court of *chancery*, against the appellant, for an account, and the specific performance of an agreement, by which the appellant and one *Henry Wisner* were to convey to the respondent part of lot No. 39. in the angle of the *Minisink* patent, in the town of *Wall-kill*, in *Orange* county. The bill stated, that about sixteen years before, the complainant purchased of one *Corry* his improvements made on a farm of which the complainant, soon after, took possession, and which he has since continued to occupy and improve; that he understood, afterwards, that the farm was part of lot 39. in the angle of the *Minisink* patent, and in *May*, 1787, entered into a verbal agreement for the purchase of the land with *Wisner*, who had informed the respondent, that he and *Waters* had purchased the undivided part of lot No. 39. of the commissioners of forfeitures. The respondent agreed to pay one dollar per acre for the land, and paid *Wisner* 150 dollars in cash, the receipt for which was lost; and in *June* he paid *Wisner* 30 dollars more on account of the purchase.

On the 19th of *October*, 1787, the respondent entered into written articles of agreement with *Wisner* and *Waters*, which were duly executed by them, which stated as follows: that *Waters* and *Wisner*, " the parties of the first part, do agree, and have sold to the party of the second part, (*Ezekiel Travis*,) three equal undivided

distinction, in this respect, between the case where the vendee seeks to compel the vendor to a specific performance, and where the vendor resorts to equity to compel a specific performance on the part of the vendee. But a conveyance for a valuable consideration, made *bona fide* to a third person, without notice of the previous contract of sale, and before it has been carried into execution, will transfer the legal title to such third person.

Mere lapse of time is not, in all cases, an objection to decreeing a specific performance of an agreement. And where an agreement for the sale of land was suffered to remain unexecuted for 14 years, the vendee having continued in possession, the court, under the circumstances of the case, decreed a specific performance of the contract.

Where on a bill in chancery, for a specific performance of an agreement to convey land, the complainant alleged a payment of part of the purchase-money, under a verbal agreement, prior to the written contract, and a feigned issue was awarded to try the fact as to the payment, and the jury found the fact; it was held, that the defendant having acquiesced in the feigned issue, and controverted the fact, at the trial, could not, afterwards, object to the decree allowing the payment in part of the purchase-money.

And where the agreement was, that A. and B. should sell and convey to C., and the payment was made to A. who in fact, had no legal title to the land, it was held that B. could not, afterwards, object to such payment, but it was to be considered, in effect, the same as if paid to B.

fourth parts of one equal undivided half part of lot No. 39. in the angle of the *Minisink* patent, and the said *Wisner* and *Waters* do hereby bind themselves, their executors and administrators, to give to the said *Travis* a good and sufficient deed, in law, for the above said three equal undivided fourth parts of one undivided half part of the said lot No. 39. which lot contains 1,170 acres, more or less: which conveyance is to be executed on or before the first day of *December* next. And the said *Travis* doth hereby bind himself, &c. to secure, at the same time, to the said *Wisner* and *Waters*, one dollar for each and every acre of the lands hereby sold; and for the true performance of the above said articles, the parties bind themselves to each other in the penal sum of 500 pounds."

The bill further stated that the respondent, ever since the agreement, continued to reside on the lands, and had in his actual possession 234 acres, on which he had made great improvements; that in *November*, 1787, he sold to *Wisner* a pair of oxen on account of the contract, valued at 40 dollars; and delivered to *Wisner* turnips, at different times, to the value of 2 dollars and 68 cents; and not long afterwards gave *Wisner* a power of attorney to receive a sum of money due to the respondent for a pension, being either 25 or 48 dollars, which sum he did not exactly know, as the appellant refused to inform him of the sum received. That the reason why the payments made subsequent to the contract were not endorsed upon it, and the previous payment acknowledged in the agreements, was because the respondent was unacquainted with the forms of business, and wholly confided in *Wisner* and *Waters*. That during all the transactions, the respondent believed the legal title to the land to be in *Wisner* and *Waters*, as he was told by *Wisner* that it belonged to them jointly, and that payment to him was the same as if made to both; and that the verbal agreement with *Wisner*, and the payment of the 150 dollars to him, the respondent believed, were made with the knowledge and approbation of the appellant. That in *March*, 1790, *Wisner* died insolvent; and since his death the respondent has often demanded a deed from the appellant, offering to pay or secure the principal and interest due for the land; but though the appellant sometimes expressed himself willing to give a deed, he finally refused to do so; and commenced an action of ejectment against the respondent to recover the possession of the land, which was tried at the *Orange* circuit, in *June*, 1802, and a verdict obtained

against the respondent, who expected to be turned out of possession. At the trial, the appellant produced a deed to himself from the commissioners of forfeitures, for the lands, or a considerable part thereof. The appellant has not, since the power given him to receive the pension money, demanded any further payments, though the respondent has often told him he had paid for more lands than he possessed; and that the appellant has said that the respondent should have as much land as he had paid for, and had caused a part, about 234 acres, to be surveyed off as the respondent's land; and at the time of such survey had said that the respondent had paid for it. The bill prayed for an account, and that on payment of the residue of the money, if any should be found due for the land, the appellant might be decreed to make a good and valid conveyance of the land, in fee-simple, to the respondent, and for general relief.

The *answer* of the appellant stated that he purchased the land in question, in May, 1786, in his own name, and a conveyance was made to him solely, and that it remained his sole property, except, that by a verbal agreement, *Wisner* was to have a share of it, on paying a certain sum, which he never did. He admitted the execution of the written agreement set forth by the respondent; and that the reason why *Wisner* executed it, was because of the verbal agreement between him and the appellant. The respondent denied all knowledge of the payments set forth by the respondent; and believed they were made to *Wisner* on other accounts, as the respondent had been a tenant of *Wisner's*, and owed him rent; and because the respondent had given a bond for 20 pounds to *Wisner* which was unpaid at his death. He admitted the delivery of a yoke of oxen, which the respondent said *Wisner* had purchased of him, but denied that it was on account of, or in part payment for, the land. He also admitted that after the year 1790, he received a power of attorney from the respondent to receive some money due to him for a pension, under which power he received 24 dollars, and having an account against the respondent, he retained the money so received; and soon after told the respondent how much he had received of the pension; but the respondent never asked him for the money, nor requested him to credit it on account of the land. That after the date of the agreement, the appellant and *David Johnson* who owned the other undivided part of lot 39. made a partition, and released to each other, and the part in the possession of the respondent fell to the share of the appellant;

*IN ERROR.*
······
ALBANY,
March, 1812.

WATERS
v.
TRAVIS.

That several years after, the appellant having made frequent applications to the respondent to pay for the lands, without any effect, the respondent saying it would not be in his power to pay for them, the appellant, with the knowledge and consent of the respondent, sold and conveyed two parcels, one of 50 acres, and the other 150 acres, part of the same land; and that the whole of the residue which fell to the appellant, on the partition, is in the respondent's possession. The appellant denied that he was ever present at any survey of the land, except to run the division line between him and *Johnson*, the other survey being made in his absence; or that he ever admitted that the respondent had paid for the land in his possession; or that he knew any thing of the conversation between the respondent and *Wisner*. He admitted that he had offered to convey to the respondent such parts of the land, comprehended in the agreement, as were in the respondent's possession, on his paying for the same, at the price mentioned, with interest thereon, and also on the price of the other parts of the land sold, up to the time they were sold, which the respondent had neglected to do; that the appellant did bring the action of ejectment, as stated by the respondent, and which was contested by the respondent, and tried, and a verdict found for the appellant. The appellant denied all other material allegations in the bill.

A *replication* was filed by the respondent, and witnesses were examined on both sides; but as their testimony was contradictory, and a *feigned issue* was afterwards awarded, it is unnecessary to state the evidence.

The cause was heard by the chancellor, in *May*, 1805, on the facts stated in the depositions and the points of equity raised, and in *December*, 1805, an order was made for the trial of a *feigned issue*, to ascertain whether the respondent paid the 150 dollars in *May*, 1787, and the 30 dollars in *June*, as part of the consideration for the purchase of the land; and whether *Wisner* received those sums as such; and whether the yoke of oxen was sold and delivered, in *November* following, to *Wisner*; and whether he agreed that the price should be a part consideration for the land. This issue was tried, in *September*, 1807, and the jury found by their verdict, that the two payments had been made, and the yoke of oxen sold and delivered to *Wisner*, in part payment of the consideration money, for the purchase of the said land. The *postea* being returned to the court of chancery, the cause was finally heard; and the chancellor, on the 27th of *October*, 1808, pronoun-

ced a final decree. The respondent's counsel waiving all claim against the appellant in regard to so much of lot No. 39. as the appellant had, before the filing of the answer, become incapacitated to convey, by reason of the partition made between him and *Johnson*, or by reason of the conveyances of the two parcels of the said lot, set forth in the answer, or by reason of another parcel conveyed, at or before the partition, to *Thomas Waters;* the chancellor ordered and decreed that the appellant convey to the respondent, by a good and sufficient deed, in the law, so much of the land contained in the said lot No. 39. not exceeding three equal fourth parts of one half of the said lot, as the appellant had not become incapacitated to convey, by reason of the partition and release and the conveyances mentioned; and that it be referred to a master to take an account of the quantity of land to be conveyed, and of the payments made by the respondent, and to state an account between the parties, charging the land so to be conveyed at one dollar per acre, and deducting the payment of 150 dollars, made in *May*, 1787, and the sum of 30 dollars paid in *June*, and such amount as should appear to be due to the respondent from the appellant, on account of moneys received by him on the pension payable to the respondent; and deducting also 40 dollars for the oxen sold and delivered to *Wisner* in *November*, 1787, and charging the appellant with the price of the turnips, to be ascertained by the master; and charging interest, from the 1st of *December*, 1787, on the balance, as may appear to have been due; and that on the respondent's paying to the appellant such balance, if any, as upon such account should be found to be due for the land, the appellant should make the conveyance aforesaid; reserving the question of costs and all further directions till the coming in of the master's report.

The reasons for this decree were thus assigned by

THE CHANCELLOR. The bill in this cause was filed for a specific performance of a contract entered into between the complainant, of the one part, and the defendant and *Henry Wisner*, of the other part. The contract is dated the 19th of *October*, 1787, and is set forth in the complainant's bill, and its purport is generally admitted by the defendant's answer.

This contract binds the defendant and *Wisner* to give to the complainant a *good and sufficient* deed, in the law, for three equal undivided fourth parts of one equal undivided half of lot No. 39.

IN ERROR.
......
ALBANY,
March, 1812.

WATERS
v.
TRAVIS.

in the angle of *Minisink*, which lot contains 1,170 acres, more or less, and to execute such conveyances before the first day of *December* then next; and the defendant was then, by its terms, " to secure at the same time to the said *Wisner* and *Waters*, one dollar for each and every acre of the land sold."

From the proofs in the cause, it appeared that the legal title to this land was exclusively in *Waters*, though there were strong indications that *Wisner* was originally interested equally with him.

It was, however, of little consequence to the merits of the cause, as whether he was or was not would not vary the decision.

As the objection respecting the want of parties, which was urged as a preliminary question, was waived in consequence of an intimation, that if it prevailed, it would only operate to open the bill for amendment, by adding the necessary parties, the only questions necessary to be determined were,

1. Whether the complainant could have relief, as he did not entitle himself to a performance *in toto?*

2. Whether the evidence of the payments alleged to have been made before the contract was admissible?

The cases cited on the argument before me did not support the doctrine for which they were adduced.

The case of *King v. Wrightman* (2 *Anstr.* 80.) arose on a bill for specific performance of a contract, respecting a lease which had seven years to run at the time of making the contract. Two years elapsed and a decree was entered, by consent, to accept the same sum which was to be paid two years before.

Lord Chief Baron *Eyre* observed, " when you brought a bill for a specific performance, you ought to have considered whether it was for your benefit or not. This is the most beneficial decree which could have been pronounced for the plaintiff. We can only, on this bill, decree specific performance of the same contract, not a similar one." But the rehearing was denied chiefly on the ground of consent.

In the case of *Goring* v. *Nash*, (3 *Atk.* 185.) it was held that the contract must be performed in its entirety; for a reason which to me appears unanswerable, " because nobody can tell what the parties laid the greatest weight on; and therefore it must be attended with bad consequences, if agreements *were to be split*, and one part to be decreed and another not."

The case of *The Executor of Morrison* v. *Welling* was settled by compromise, though in consequence of my intimation that the

IN ERROR.
......
ALBANY,
March, 1812.

WATERS
v.
TRAVIS.

defendant was not compellable to pay the money stipulated by the contract, unless the whole of the land contracted for was conveyed, and that no *pro rata* payment could be enforced.

There can be no doubt but the parties contracting may, by mutual concession, narrow their rights derived from the contract, and the parties, in this case, appear to have done no more.

The complainant, by the terms of the contract, was entitled to an undivided share of lot No. 39. equal to 440 acres, upon securing the payment of one dollar an acre. The defendant made partition with his cotenant, with the assent of the complainant, as he expressly states in his answer. He sold and conveyed 200 acres of the parcel assigned to him, as his portion of the common land, as the complainant informed him it would not be in his power to pay for it; and the residue, it is admitted, was, and still is, in possession of the complainant; and this residue is all the complainant claims.

Part of the land contracted for, has, therefore, received a destination perfectly conformable to the interest of the parties to the contract. It is, in effect, so far a performance of the contract, and in every respect consistent with it.

The rule that a written contract cannot be impugned by parol, does not apply to this case. There is no cause of controversy; for both parties concur in stating the circumstances detracting from the rights of the complainant under the contract, accompanied with a full admission of its existence in its original state.

The second question depends on the terms of the contract and the circumstances attending it, disclosed by the testimony.

The contract contained a plain stipulation, that upon receiving the conveyance the complainant should secure, *at the same time*, to the said *Wisner* and *Waters* one dollar for every acre of the land so sold. This does not import a previous payment. On the contrary, it appears to impose it on the complainant, if he had paid any part of the consideration, to secure a dollar an acre in addition.

Evidence of payment before the contract, unless proved to have been omitted by mistake or fraud, must, on the well-established rule respecting written contracts, be rejected; but it was admitted that the defendant is illiterate, and there seems to be no doubt that *Wisner*, one of the parties, drew the agreement; and hence I thought the payment and reason of the omission were proper objects of inquiry. If the payment had actually been made, I thought

2

that combined with the long forbearance of the complainant and
Wisner, the latter on the verge of insolvency, a strong presump-
tion would arise that the money had been intended in payment of
the land, unless rebutted by other evidence.

The first payment spoken of was 150 dollars which was alleged to
have been made on the 7th of *May*, 1787, but of which the defend-
ant denies any knowledge. If this payment was actually made, and
omitted to be acknowledged in the contract, either through mistake
or design, it ought now to enure to the benefit of the complainant.

As to the objection that the payment, if any, was made to *Wis-
ner*, who it appears had no interest, it ought not to prevail.

This was a joint contract with the defendant and *Wisner*. The
security for the consideration money was to be joint; and I think
a payment to either must be deemed a good payment on the con-
tract, in consequence of their apparent union of interest; and it
was not imposed on the complainant to know the secret trust
which the defendant now insists existed between them.

The testimony with respect to the payments was involved in
doubt. It required accurate estimates of the relative credibility
of the witnesses to determine correctly on the occasion. This is
the appropriate object of a jury; though I regretted, from the
small sum in controversy, that this expedient was necessary to be
resorted to.

I directed an issue to determine whether any and what pay-
ments had been made, and at what periods, by the complainant to
the defendant and *Henry Wisner*, or either of them, on account of
the contract.

I did not conceive the question, whether the written contract
was to be deemed a mutual and dependent contract, as requiring a
minute examination. The acts of the respective parties were
evidently intended to be concurrent. The nature of the trans-
action indicated that the defendant and *Wisner* were to do the first
act—*to convey*. The only point of view in which it could be ma-
terial, was with respect to the lapse of time. This was imputable
to neither, as contradistinguished from the other.

The complainant was in possession of the land contracted for.
The defendant and *Wisner* were inhabitants of the same county
in which the land lay, and in a geographical sense, as taken from
a general knowledge of the county, they were not remote from it.
The mere acquiescence in his possession for a length of time,
without any claim, is a circumstance, at least, sufficient to show
that the forbearance was mutual.

The issue awarded having been tried, and found in favour of the complainant, the cause again came up, on the equity, reserved for a final decree.

On the part of the defendant, it was objected,

1. That there were not proper parties.

2. That the payments found by the jury were repugnant to the written contract, which ought to control; and,

3. That the bill being for a specific performance, could not be sustained, unless it is sustained *in toto.*

The first question had already been discussed, and determined in favour of the defendant and expressly waived by him; and though it was urged that this was merely waiving the objection at the hearing, I had no doubt but that from the mode of making the waiver, it was to be carried throughout the cause; for after the defendant had succeeded in obtaining the opinion of the court, that the representatives of the defendant *Wisner* ought to have been parties, and had formally and explicitly waived the effect of that opinion, alleging that it was done to prevent the parties from travelling over the same ground, which they had already passed, it did not lie in the mouth of the defendant to resort to it, as the calling in those representatives was principally to make them parties to the account to be taken on the contract, for his benefit, and to aid him in its adjustment.

A new suggestion was, however, made on this subject, which, it appeared to me, would have gone the length of deciding this question, contrary to the opinion before expressed, if it had been an open one, and that was, that the defendant alleged that *Wisner* never had a legal title to the land affected by the contract: that the conveyance for it was in the defendant *Waters's* name, and that *Wisner* was to have had a share, when he paid his proportion of the consideration money, which he never did, and of consequence, if the defendant *Waters* held it, as he then alleged in his answer, discharged from the trust for the nonpayment, he could give a legal title for the entirety, and if he held it in trust, at the time the contract was made, that contract operated as a new declaration of a trust, with the consent of all parties interested, and a destination was given to it, for the benefit of the complainant, who became *cestui que trust* as to the land, and *Wisner* only entitled to a share of the consideration money.

The second question had, on the former argument, and before the issues were awarded, been determined upon, and still thinking,

that if those payments had been made, and they were affirmed by the verdict of a jury, *this omission must have arisen from fraud or mistake ;* and not meaning to touch the general doctrine, that written contracts are not to be impugned by parol, unless on those grounds, I was of opinion, that the cases cited on the argument had no bearing on the case.

The 3d question had also been passed upon ; it was decided on the ground that the parties contracting, may, by mutual concession, narrow their rights derived under the contract. The complainant contracted for the purchase of three undivided fourths of an undivided half of 1,170 acres, equal to 438 3-4 acres. The complainant and defendant had, by their mutual acts, assented to a division, so as to enable each of the parties entitled to moieties to hold in severalty. In the share allotted to the defendant, the 234 acres in the possession of the complainant were included. The defendant, in his answer, alleged that he had sold the remainder ; and the complainant expressed his disposition to refrain from disturbing the sale, and to retain and pay for the 234 acres, according to the contract.

It is probable the complainant could not have succeeded for more, as for a specific recovery ; for if the defendant was a trustee for the complainant, and a *bona fide* sale had been made, without notice of the trust, the purchaser would hold discharged of the trust. But can it be equitable, that because a man has escaped from his contract, by parting with part of its subject matter improperly, and thus prevented the complainant from receiving complete justice, that this should operate to discharge the defendant wholly from the performance of his contract, specifically, *pro tanto* as he has it in his power ? Certainly not, nor was any case cited which goes that length.

The doctrine that a contract enforced specifically must be so in its entirety, appears to me solid; but where the right of the one party is sustained, and the other can only shelter himself, by the allegation that part of the property sought is not in his power, and so placed by his own act, from a complete compliance with it, the rule of equity as to the entirety must be strangely misapplied, if it could possibly prevent the party injured by the alienation, from saying, " True it is, I am entitled to the whole, but under all circumstances, I am content to accept what is in the power of the defendant to give, and relinquish my right to the remainder."

*margin:*

IN ERROR.
.....
ALBANY,
March, 1812.
WATERS
v.
TRAVIS.

*IN ERROR.*
......

ALBANY,
March, 1812.

WATERS
v.
TRAVIS.

It is every day's practice, in the courts of common law, thus to contract the rights of a plaintiff, the amount of whose recovery is either inconsistent with his claim, or where the plaintiff is disposed to relinquish a part of it; and to effect that, the defendant's consent is not necessary.

If this is so in cases of pecuniary demands, I can discover no reason why it should not equally apply to claims for the performance of contracts specifically.

The complainant, at the hearing, professed his willingness to accept the 234 acres in his possession; to pay for it, in the terms of the contract; and to relinquish his claim to the remainder : thus settling the contract definitively, and retaining no claims under it.

I, therefore, directed it to be referred to a master to take an account on the contract, charging the complainant, according to its terms, for the land in his possession, and crediting him with the sums found to have been paid on account thereof, to the end, that the defendant might be decreed to convey in fee to the complainant the land he possessed, upon the payment of the balance due on the contract, settled on those principles.

The conveyance ought to be for the whole, as he had the title to the whole, as appears from his admissions in the answer.

I was also of opinion, that the defendant ought to pay costs.

All other directions were reserved till the coming in of the master's report.

*Riggs* and *Baldwin,* for the appellant.(a)   1. This cause is interesting only as it regards a very important branch of the powers and rules of a court of equity, as to the specific performance of contracts. We contend that the decree is a gross misapplication of those rules; as it admits parol proof, and decrees a *partial* specific performance of a contract. The exercise of the equity powers in regard to the specific performance of contracts is *discretionary.* The court of chancery is not bound to decree a specific performance; but will always weigh with great caution the circumstances of every case, before it decides in favour of the complainant.*

* *Buxton* v. *Lister,* 3 *Atk.* 383—386.
*Underwood* v. *Hitchcox,* 1 *Ves.* 279.
*Radcliff* v. *Warrington,* 12 *Ves.* jun. 326.

(a) The reporter not having attended the session of the court of errors in 1812, is indebted to *I. H. Tiffany,* Esq. for the notes of the arguments of counsel, which he has obligingly communicated. He has also been much assisted on this, as on so many other occasions, by the notes of Mr. Chief Justice *Kent.*

IN ERROR.
......
ALBANY,
March, 1812.

WATERS
v.
TRAVIS.

If the party who seeks a specific performance has been guilty of great delay, it is always a decisive objection to granting him relief in equity. *Time* is material in regard to the performance of a contract in equity as well as at law. If a purchaser is not merely inactive, and does nothing; but if he does not evince a marked intention and eagerness to carry his contract into execution, a court of equity will not aid him, though he has paid part of the purchase-money.*

Here was a wilful delay for 14 years, on the part of the respondent; and by defending the suit at law, he showed a complete *renunciation* of the contract. Why did he not, at that time, file his bill, instead of defending the suit in ejectment. As to the lapse of time, it is no answer to say, that the appellant did not execute and tender a deed. It is a settled rule that the purchaser, not the seller, must prepare and tender the conveyance.†

Payment of money, or taking possession, does not amount to a part performance as to lands, though it may as to chattels.‡

2. Again, the respondent must stand on the grounds set forth in his bill;§ and there is no allegation of fraud, mistake or surprise, in making the agreement, which was read to him.

Where a party seeks the specific performance of a written contract, no parol proof is admissible to vary the agreement; though it may be received to rebut an equity.** There is no pretence of fraud, mistake, imposition or surprise, in this cause. Under the prayer for general relief, the party cannot be relieved upon any ground not set forth in his bill; here the bill proceeds exclusively on the written contract. It suggests no other ground for relief.††

3. A specific agreement must be executed *in toto* or not at all. A performance is not always decreed according to the written agreement, until it is corrected according to truth and justice, of fraud or mistake, and then it is executed *in toto*.‡‡

The contract, bill and decree all differ, as to the quantity of acres. The decree differs from both contracts, and refers it to a master to ascertain the quantity, as well as the price of a quantity of turnips, forming a part of the consideration, according to the decree. In *Milnes* v. *Gery*,§§ where there was an agreement of sale according to the valuation of two indifferent persons, to be chosen by the parties, and a bill was filed for a specific performance, praying that the court of chancery would appoint a person to make the valuation, the court dismissed the bill.

§§ 14 Ves. jun. 400. 407.

---

* Harrington v. Wheeler, 4 Ves. jun. 686 —690. and in note. Lloyd v. Collett, Sugden's Law of Vendors, 245 —248. 13 Ves. jun. 225—229. Alley v. Dechamps.

† Sugden's Law of Vendors, 163. 1 Lev. 14. 2 Smith's Rep. 543. 1 Forr. Exch. Rep. 61.

‡ Clinaw v. Cooke, 1 Sch. & Lef. 22—40. Seagood v. Meul, Prec. in Chan. 560.

§ 6 Johns. Rep. 543. 1 Bro. Ch. Ca. 92.

** Jordan v. Sawkins, 4 Bro. Ch. Ca. 476. Townsend v. Stangroom, 6 Ves. jun. 328—332. Rich v. Jackson, ib. 334. in note. Robson v. Collins, 7 Ves. jun. 130 —133. Woollam v. Hearne, ib. 211—219.

†† 1 Br. Parl. Ca. 200. (2d edit.) 2 Br. Ch. Ca. 559. 1 Sch. & Lef. 38, 39. 42. 1 Anst. 80.

‡‡ 2 Ves. 299, 3 Ves. jun. 402, 416. 420.

‡‡ 3 Atk. 190. 1 Anst. 80. 6 Ves. jun. 328 —331.

IN ERROR.
......
ALBANY,
March, 1812.

WATERS
v.
TRAVIS.

* 1 *Ves.* 127,
128.   1 *P.*
*Wms.* 203.   5
*Ves.* jun. 688.
2 *Atk.* 575.   1
*Br. Ch. Ca.*
92. 7 *Ves.* jun.
218. 4 *Cranch,*
224.
† 2 *Ves.* jun.
243.

‡ 1 *P. Wms.*
277.

§ 2 *Br. Ch.*
*Ca.* 118.

** 3 *Atk.* 388.

†† 1 *Vern.* 366.
*Prec. in Ch.*
103.

4. Again, a person cannot be permitted, by parol evidence, to contradict or invalidate his own deed, as to any point, unless it be in cases of fraud, mistake or surprise, set forth in the bill.*

Admitting the parol proof, both that and the decree grossly contradict the written contract. In *Mortimer* v. *Orchard,*† where the witness for the plaintiff proved an agreement different from that set forth in the bill, and the defendants in their answer stated an agreement different from both, it was held that the bill ought to be dismissed.

*Bunner* and *E. Williams,* contra. There must be a decree for the respondent on some ground, either for a whole or a part of the land, either upon the principle of allowing the payments, or, if disallowed, upon paying the whole amount again, with interest. The bill prays for an account; and that, on payment of what may be due, the defendant may convey; and for general relief. And the appellant, in his answer, seems to admit that there may be either a total or partial performance of the contract.

From the evidence it appears that *Wisner,* not *Waters,* paid the whole consideration money for the land to the commissioners of forfeitures; *Wisner,* therefore, was the actual owner of the land, though the title was taken in the name of *Waters,* who was his son-in-law. *Waters* was, therefore, but a mere trustee, and was bound to fulfil the agreement of *Wisner,* and to convey to any person holding the equitable estate.‡

Equity allows compensation for the part that is deteriorated, and so it sometimes decrees a part performance.§ The vendee cannot object to the part performance. Every fact making out fraud, imposition or mistake, is substantially, if not formally, charged in the bill. The parol evidence does not vary from the written contract. *Wisner* had a resulting trust in the deed to *Waters* which is susceptible of parol proof. Parol proof has been admitted to prove an omission of a clause of redemption in a mortgage.** So parol proof has been admitted to show that a person who made a purchase and took a deed in the name of another, had paid his own money.†† But the objections now raised, were waived by going to trial on the feigned issue, and suffering the evidence to be given at the circuit, without making any objection.

*Travis* has *bona fide* paid all the consideration money, and if he had not, he is willing to do so, and that is sufficient to entitle

him to a decree in his favour.   The objection of the appellant
goes to the remedy, not to the right.

If the party means to avail himself of the statute of frauds, he
must plead it, or rely upon it in his *answer*.   It is too late to be
objected here.\*   Besides, a part performance takes the case out
of the statute ; and a part payment was a part performance.†
An antecedent possession under another title can make *no differ-
ence*.‡

Time is not always material in executory contracts.   But there
was, in fact, no delay on the part of the respondent.   He paid
the money and got possession of the land in season.   He is not
shut out by the statute of limitations.   It is for chancery to relieve
against the lapse of time, when the party has not abandoned his
right.   Had the respondent delayed a few years longer, the law
would have presumed a grant to him.

As to the objection that the respondent waived the agreement,
by defending the ejectment suit, it may be said, that in *England*,
it has been held that a trustee could not maintain ejectment against
his *cestuy que trust;* and it is very lately that it has been decided
in this state, that an equitable title cannot be set up in defence to
an action of ejectment.§   A tenant, by permission also, is entitled
to notice to quit; and these considerations probably influenced
the respondent in defending the ejectment.   It is clear that the
price of the land was one dollar per acre.   This is acknowledged
by the appellant.

Under the prayer for relief generally, the party is entitled to
any specific relief not inconsistent with it.\*\*

SPENCER, J.   The first objection to the decree is, that it de-
crees a specific execution of part of an entire contract; that the
respondent will get a conveyance for 234 acres, instead of 439,
to which he was entitled, if any.   The agreement of 1787 was
executory; it did not vest any legal title in the respondent; but
it gave him a right to coerce the appellant and *Wisner*, by resort-
ing to a court of equity, to a specific execution; or he had the
election to sue at law, in case they refused to convey the lands to
him, for damages.   It cannot be controverted, that a conveyance
for a valuable consideration, made *bona fide* to a third person,
without notice of the agreement, and before it had been carried
into execution, by a deed, would have passed to a third person
the legal title.   The appellant discloses, by his answer, that he

IN ERROR.
......
ALBANY,
March, 1812.

WATERS
v.
TRAVIS.
\* 6 *Ves.* jun.
12.38, 39. 504,
505.
† 3 *Atk.* 4.   4
*Ves.* 720.     3
*Ves.* 39. *note.*
4 *Ves.* 91.
‡ 7 *Ves.* 130.

§ 2 *Johns.*
*Rep.* 221. 84.

\*\* 6 *Ves.* 28.
335, 336, 337.
7 *Ves.* 134.

IN ERROR.
......
ALBANY,
March, 1812.

WATERS
v.
TRAVIS.

came to a partition with the other tenant in common, of the lot, an undivided part of which,, commensurate to his interest therein, he had covenanted to convey to the respondent. I have not understood the appellant's counsel to urge this partition as an objection to a specific execution of the agreement; and had it been urged, it could not avail him. The respondent has a right to consider the appellant as acting for him in that partition. The act itself did not vary the rights of the parties; it was reducing to a certainty what was before uncertain; it was merely locating the three fourths of a half of the lot; and if the respondent acquiesced in that arrangement, he had a right to do so. The idea cannot be tolerated, that a man shall, by his own act, prevent another with whom he has contracted from receiving the benefit of his contract, when the thing contracted for substantially resides in the party contracting; but has merely undergone a modification. As it respects the appellant, therefore, it cannot be pretended that he is exonerated from a specific execution of his contract, because, he has ascertained and located the interest he had in the tract as a tenant in common. Had the respondent complained of this interference, the result, probably, would have been different; but he is contented with it. He elects to consider the appellant as his agent, in that transaction.

With respect to the three parcels of the lot conveyed away by the appellant before his answer came in, the same remarks are applicable. The appellant cannot take advantage of his own wrongful acts, to discharge himself of a vested right in the respondent. Whether these conveyances would have stood the test of an inquiry instituted by the respondent is immaterial. He acquiesces in them; and so far the appellant has, by his own act, disabled himself from performing his contract specifically. It is against all my notions of justice, to allow the appellant to excuse himself from performing so much of the contract as he can yet perform, because he has seen fit wrongfully to abridge himself of the power of performing the whole. And I again recur to the observation, that the converse of this proposition would not be just or true. The respondent might insist on having all the land or none, or he may elect to consider the acts of the appellant as his, and thus make valid what was wrongful.

The cases which have been cited, to show that a court of chancery will not decree a partial performance of articles, but will decree all or none, are not applicable to the case before us. As a general principle of equity, the proposition is incontestable; and

wherever it has been applied, as far as my researches go, it has IN ERROR.
been to a case, where the party called into equity to perform, ALBANY,
has the ability of performing the whole, and where the other party March, 1812.
was desirous of selecting a part of the subject matter, and taking WATERS
it, unencumbered by another part.   There is a settled distinction, v.
when a vendor comes into a court of equity to compel the ven- TRAVIS.
dee to a performance ; and when a vendee resorts to equity to
compel a vendor to perform.   In the first case, if the vendor is
unable to make out a title as to part of the subject matter of the
contract, which was the principal object of the purchaser, equity
will not compel the vendee to perform the contract *pro tanto*.
There are also other distinctions which it is unnecessary now to
advert to.   But where a vendee seeks a specific execution of an
agreement, there is, says Mr. *Sugden*, (*Sug. Law of Vend.* 193.)
much greater reason for affording the aid of the court at the suit
of the purchaser, when he is desirous of taking the part to which
a title can be made.   And a purchaser (he observes) may in
some cases insist upon having the part of an estate to which a
title is produced, although the vendor could not compel him to
purchase it.   Thus in the case of *The Attorney-General* v. *Gower*,
(1 *Ves.* 218.) tenants in common contracted for the sale of their
estate, and one of them died, it was held, that the survivors could
not compel the purchaser to take their shares, unless he could
also obtain the shares of the deceased.   But the converse of the
proposition was denied ; and it was held that the purchaser might
compel the survivors to convey their shares, although the contract
could not be executed against the heirs of the deceased.   In ano-
ther case, (10 *Ves.* jun. 315.) Lord *Eldon* held that if a man,
having a partial interest in an estate, enters into a contract
agreeing to sell it, as his own, he cannot afterwards say he
has valuable interests, but not the entirety ; and if the vendee
chooses to take as much as he can have, he has a right to that, and
an abatement.   There are other cases to the same effect.   (1 *Ves.*
jun. 221.   2 *Bro. Ch. Cas.* 118. 326. and 1 *Bro. Ch. Cas.* 140.)

In the present case the land was contracted to be sold at one
dollar per acre ; and it is not set up by the appellant that the land
in the possession of the respondent, and which was decreed to
him, is more valuable than the other parts, sold by the appellant ;
and I am, on the justice of the case, as well as on authority, of
opinion, that the decree, in this respect, ought to be affirmed.

The next point made, was the delay on the part of the re-

IN ERROR.
......
ALBANY,
March, 1812.

WATERS
v.
TRAVIS.

\* 1 *Pow.*
*Cont.* 268.

spondent from 1787 to 1802. It was insisted that after such a lapse of time he had forfeited all right to a specific execution. Generally speaking, the obligation of an agreement binds the parties from the moment it is entered into; and place and time are circumstances affecting only the performance of the engagement; and do not import, in a court of equity, conditions by which the parties are to be considered as contracting on the ground of a strict compliance, but are mere circumstances admitting of compensation.\* It would be a great and unnecessary labour to examine all the cases on the subject of a strict compliance as to *time,* and to state the distinction between those cases where the lapse of time is an objection to a specific execution, and those in which it is not. In the present case, the agreement being in writing, the possession of the respondent, and the improvements he has made on the land, are not necessary to be regarded as a part execution of the contract, to take it out of the operation of the statute of frauds and perjuries. The ground I take, in considering the lapse of time from 1787 to 1802 as no objection in this case to a specific performance, is peculiar to the facts in the case, either proved or admitted.

By the agreement of 1787, the appellant and *Wisner* bound themselves to give a conveyance, on or before the 1st of *December,* in that year, at which time the respondent was to secure the purchase-money. These acts were to be concurrent. The conveyance must necessarily have preceded the security. The *laches* in not perfecting the contract is certainly as much, if not more, attributable to the appellant than to the respondent. The lapse of time, in a case like the present, where no material inconvenience has been suffered by the appellant, can be urged only on the ground that the agreement has lain dormant; and that this is evidence of the abandonment of it by the parties. In the case of *Lloyd* v. *Collet,* (4 *Bro. Ch. Cas.* 469.)(*a*) Lord *Loughbo-*

(*a*) See the chancellor's opinion fully reported in 4 *Ves.* jun. 690. in a note. It is very imperfectly stated by *Brown.* In *Ballard* v. *Walker,* (3 *Johns. Cases,* 60.) there was a written contract to convey on or before a certain day, when the money was to be paid or received, and 4 years having elapsed from the date of the contract, without any thing being done, and before the *vendee* gave notice to the *vendor* that he should insist on the agreement, and five years elapsed before he actually tendered a performance, the supreme court held that the contract must be presumed to be rescinded, and that no action could be maintained upon it by the vendee, though it appeared that the *vendor* had, within a year after the date of the contract, incapacitated himself to perform on his part, by conveying the land to a third person.

IN ERROR.
......
ALBANY,
March, 1812.

WATERS
v.
TRAVIS.

*rough* said, the conduct of the parties, inevitable accident, &c. might induce the court to relieve, notwithstanding the lapse of time. Here, then, has been a continued possession, on the part of the respondent, from the period of the agreement to this time; not as a tenant, liable to rent, but as holding under the agreement. Had the respondent entered as a tenant originally, and then made the agreement, and continued to possess, the possession might have been viewed as a tenancy, and it might have been insisted that the possession was not an affirmance of the agreement. But as the case is, the continuance of the possession, by the tacit consent of the appellant, until he instituted the ejectment suit, was a constant and continued affirmance on the part of the appellant that the holding was under the agreement. This is irresistible evidence that the agreement was not abandoned by the parties; and their conduct was such as to leave no doubt that they both looked to the future performance of it. This case, then, comes within the principle laid down by Lord *Loughborough*. It is in vain to say that the respondent did not originally enter under the agreement. He did not enter as a tenant; and unless he held under the agreement, he was a trespasser. It would be absurd to suppose that he was tolerated to live on the land for such a length of time, as a trespasser. The fair and natural interpretation of the act of possession is, that it was because the agreement had been entered into, and was expected by both parties to be performed.

I have said that no material inconvenience has been suffered by the appellant; and the counsel have insisted, as a notorious fact, that the lands have appreciated. On this point we have no evidence; but if it be admitted, are we to suppose that the appreciation of the land is greater than the interest of the money, in case no payment has been made? I cannot say so; and, therefore, in the absence of proof to the contrary, I recur to the observation, that the appellant will suffer no material inconvenience from the lapse of time.

The next point made was, that to allow the respondent to prove payments anterior to the contract, would be impugning the deed by parol proof; and that, therefore, the feigned issue was immaterial; and under this head, it was contended that the bill contains no allegations of fraud, or mistake, in the agreement itself.

The answer by the respondent's counsel to this objection,

IN ERROR.
......
ALBANY,
March, 1812.

WATERS
v.
TRAVIS.

struck me with force; that after the party has been put to the expense of a feigned issue to ascertain the verity of disputed facts, after an acquiescence in the order for that issue, and after taking a chance to disprove the alleged facts, the appellant comes here with an ill grace to say the facts were immaterial, and the finding of the jury nugatory. I will not, however, say that the issue is conclusive on the appellant, and that he was bound to appeal from the order, or that he cannot now allege that the agreement, *ex vi termini*, precludes the proof by parol or anterior payments. This, however, I will say, that the appellant's acquiescence in the feigned issue, his controverting those payments on the trial of that issue, and especially, his not setting up, or pretending, that the precedent payments were considered at the time the written agreement was entered into, and thrown in, are leading and controlling facts to show that such payments were omitted to be noticed in the agreement, and were entitled to be deducted from the purchase-money. One thing is clear to me, that the price of the land was precisely one dollar an acre, and no more. This is evident from the agreement itself, and from the consideration that the appellant does not pretend that any more was given, or to be given for it; and admitting that the respondent was to give security to that extent, when he received a conveyance, he would have been entitled to have any demands he had against the appellant and *Wisner* set off, had they subsequently sued him on that security, if he could establish the facts that the price of the land was one dollar an acre, and that he had made payments to them for which he had not been credited. A receipt for the last quarter's rent is presumptive evidence that the rent for former quarters has been paid. This presumption may be rebutted, and it may be shown that the prior quarters were not paid. So if *A.* give *B.* his bond for a sum of money, it is to be presumed that it was given for what was then due; but it may be shown that *B.* was indebted to *A.* before, and that the bond was given upon a distinct transaction. It follows, that if the payments found by the verdict on the trial of the feigned issues, were made towards the purchase of the land, and the land was sold at one dollar an acre, those payments must be allowed, and in this respect the decree is correct.

The last objection to the decree is, that *Wisner* did not own any part of the land; and, therefore, the payments made to him ought not to be allowed against the appellant.

It does appear that *Wisner* paid part of the money, for the pur-

chase, and *pro tanto*, he was equitably interested in the land.
But it is too late for the appellant to make the objection against ALBANY,
the respondent. The appellant and *Wisner* joined in the agree- March, 1812.
ment of 1787. This is a decisive answer to that objection. It WATERS
was a solemn recognition, as respected the respondent, that *Wisner* v.
was interested in the land agreed to be sold. It is also controlling TRAVIS.
evidence of the fact, that *Wisner* had a legal or an equitable inte-
rest in the subject of the contract. No man should be permitted
to say to another that he has led him into an error by holding
out false appearances; but that the party deceived must, never-
theless, bear the loss resulting from that error. It makes no differ-
ence whether the payments were made to *Wisner* before or after
the execution of the agreement. *Wisner*, it is admitted on all
hands, died insolvent; and who can say, if the appellant had not
thus solemnly admitted *Wisner* to be interested with him in the
land, that the respondent might not have indemnified himself
against the loss, by getting back the money he had paid? This
the appellant has prevented, by recognising *Wisner* as an owner
of the land, and he must abide by the consequences. In every
view of the case, I am satisfied that the decree ought to be
affirmed, as well on principles of justice and equity, as on princi-
ples of law.

This being the unanimous opinion of the court, it was, there-
upon,

ORDERED, ADJUDGED and DECREED, that the decree of the 10th May,
court of chancery be affirmed; and that the appellant pay to the 1812.
respondent one hundred and fifty dollars, for his costs and
charges, in and about his defence in this court; and that the cause
be remitted to the court of chancery, to the end that the decree
of this court may be carried into execution, &c.

Judgment of affirmance.