## Salaman et al. v. Knee et ux.

*Vendor and vendee—Specific performance—Vendor's ability to convey one-half interest—Equity.*

Where vendors own only a one-half interest in property, the whole of which they agreed to convey, they may be compelled to convey their one-half interest upon payment by the vendee of one-half of the purchase price if the vendee so elects.

Bill in equity for specific performance. C. P. No. 5, Phila. Co., Dec. T., 1922, No. 9809.

Exceptions to adjudication of MONAGHAN, J.

MONAGHAN, J., after a brief statement in narrative form, made the following findings of fact and conclusions of law:

### Findings of fact.

1. On Nov. 4, 1922, a written contract for the sale of real estate was entered into between Samuel Knee & Son, agents, of the first part, and Asher Salaman and Hyman A. Nowak, of the second part. The contract was signed by Samuel Knee and Anna Knee, the defendants herein, and Asher Salaman and Hyman A. Nowak, the plaintiffs. Samuel Knee & Son were acting as agents in the transaction for Samuel Knee and Anna Knee, the defendants, and for no other person.

2. By the written contract, the plaintiffs, Asher Salaman and Hyman A. Nowak, agreed to purchase, and Samuel Knee and Anna Knee, the defendants, agreed to sell, the premises known as Nos. 2300, 2302, 2304, 2306, 2308, 2310, 2312, 2314, 2316 and 2318 Frankford Avenue, Philadelphia, Pennsylvania, for the sum of $33,500, $1000 to be paid at the signing of the agreement, and of the balance of the purchase money, $12,400, in cash, at the time of settlement, and $20,100 in a first mortgage or mortgages, to be split according to assessments; the title to be such as would be insured by the Real Estate Title Insurance and Trust Company; the agreement to be performed within ninety days from the date thereof, such time to be of the essence of the agreement, unless extended by mutual consent in writing endorsed thereon.

A further description of the property covered by the agreement of sale is set forth in the bill in equity filed in this case.

3. At the time of the execution of the agreement, H. A. Nowak, for the plaintiffs, delivered his check for $1000 to Samuel Knee & Son, who received payment thereof for the defendants on account of the purchase price.

4. The premises mentioned in the contract were, in 1921, owned by George Lindley, who, on March 24, 1921, conveyed the same to Mary and Antonetta Risi; the deed was duly recorded.

Mary Beer conveyed her undivided moiety or half interest to Anna Knee by deed dated Dec. 21, 1921, which was duly recorded.

Antonetta Risi and Anna Knee were the owners before the execution of the written contract, and each has been, continually since, the owner of an undivided moiety or half interest in the premises in question.

Samuel Knee, defendant, at the time of the execution of the agreement, was a member of the concern, Samuel Knee & Son, and was then and continues to be the husband of Anna Knee.

5. At the time of the execution of the contract the plaintiffs did not know that Anna Knee was owner of but an undivided one-half interest or moiety in the premises.

6. On Dec. 4, 1922, the plaintiffs agreed to sell the premises to one Tofsky, who, in turn, agreed to sell to some other person.

7. On or about Dec. 29, 1922, Weinberg, a conveyancer, received a settlement certificate from the Real Estate Title Insurance and Trust Company, from which it appeared that Anna Knee was the owner of but an undivided moiety or half interest in the premises in question, and that Antonetta Risi was the owner of the other one-half interest. Weinberg told Hyman A. Nowak, one of the plaintiffs, shortly following the receipt of the certificate, that it appeared thereon that Antonetta Risi was the owner of a half interest in the premises. This was the first information or notice that plaintiffs, or either of them, had that Anna Knee was not the sole owner of the premises.

8. On Jan. 4, 1923, Antonetta Risi entered into an agreement to convey the entire title to the premises in question to one Senofsky.

9. The plaintiffs and defendants met for final settlement, under their written contract, in the offices of the Real Estate Title Insurance and Trust Company on Jan. 22, 1923. The plaintiffs had paid the initial deposit of $1000; at this meeting for settlement they deposited with the title company an additional $8000, and were prepared and willing to deposit the balance of cash required by the terms of the agreement, and were also ready, able and willing to execute the necessary mortgages.

10. The plaintiffs were ready, able and willing, and offered, to perform all the terms of the contract, and demanded that the defendants perform their part of the agreement.

11. The defendants, at the settlement, failed and refused to convey the premises to the plaintiffs. They stated, however, that they would make conveyance upon condition that the plaintiffs agree to resell the premises to one Senofsky. It appeared that Antonetta Risi, the defendants' co-owner, was at that time obligated, under agreement of sale, to convey the entire title of the premises to Senofsky for $42,500.

12. The plaintiffs, at the same meeting for settlement, explained to defendants that they could not agree to the conveyance to Senofsky, as the defendants requested them to do, because of their outstanding agreement with Tofsky, who also had obligated himself to sell the premises to another party.

13. At the settlement, and on other occasions before and after the time set for the performance of the contract, plaintiffs informed the defendants that they were ready and willing to accept a conveyance of their undivided half interest in the premises, but the defendants failed and refused, and still refuse and neglect, to make such conveyance.

14. On Feb. 1, 1923, plaintiffs tendered to the defendants the sum of $12,500 in cash, offered performance of their part of the contract, and demanded that defendants execute a deed conveying the entire title to the plaintiffs. The defendants refused to accept the money or to execute a deed. On this refusal, the plaintiffs demanded that the defendants convey to them the defendants' half interest in the premises. The plaintiffs at that time were ready, able and willing, and offered, to perform their part of the contract. The defendants made no objection to the tender, but expressly refused to convey any title to the plaintiffs.

### Conclusions of law.

1. The plaintiffs at all times and in every respect complied with their agreement with the defendants, and are, therefore, entitled to receive such title as the defendants can give, with proper abatement of the purchase price to cover the deficiency in defendants' title.

Salaman et al. *v.* Knee et ux.

2. The defendants can make title to an undivided one-half interest or moiety; the plaintiffs having elected to take this are entitled to a decree therefor upon payment of one-half of the purchase price.

3. Since the agreement of purchase and sale gives to defendants no right of election whatsoever in the event of the deficiency in their title, they can make none, and must convey their undivided one-half interest or moiety in the premises upon plaintiffs' election to have them do so.

4. A decree should be entered ordering and directing the defendants to convey their undivided one-half interest or moiety in the premises Nos. 2300, 2302, 2304, 2306, 2308, 2310, 2312, 2314, 2316 and 2318 Frankford Avenue, Philadelphia, Pennsylvania, upon payment of one-half of the purchase price agreed upon, and all other charges covered by the written contract should be abated in their proper proportions. (See Erwin *v.* Myers, 46 Pa. 96; Napier *v.* Darlington, 70 Pa. 64; Medoff *v.* Vandersaal, 271 Pa. 169; Safron *v.* McBurney, 269 Pa. 392; Rohr *v.* Kindt, 3 W. & S. 563.)

5. The defendants should pay the costs.

Counsel to prepare and present a form of decree.

*D. Arthur Magaziner*, for plaintiffs; *Yale L. Schekter*, for defendants.

MARTIN, P. J., June 22, 1925.—"Samuel Knee & Son, Agents," agreed in writing to sell ten houses located on Frankford Avenue in the City of Philadelphia to Asher Salaman and Hyman A. Nowak. The agreement was signed by Samuel Knee, and his wife, Anna Knee, affixed her mark. The receipt for the hand-money stipulated to be paid was signed by "Samuel Knee & Son."

The vendors were unable to perform their part of the agreement, as Anna Knee owned only one-half interest in the property she agreed to convey. The other half interest belonged to Antonetta Risi, who refused to join in the conveyance.

Asher Salaman and Hyman A. Nowak, the vendees in the contract of sale, filed a bill in equity, praying for a decree requiring Samuel Knee and Anna Knee to execute and deliver their deed for whatever interest in the premises they may have, upon payment to them of whatever sum of money may be due for their equity, with proper abatement for the deficiency in title.

An answer and replication were filed, the case proceeded to hearing and testimony was presented on behalf of both parties.

An adjudication was filed directing defendants to convey to plaintiffs their undivided one-half interest in the premises upon payment of one-half of the purchase price agreed upon, and that the other charges covered by the written contract should be abated in their proper proportion.

Twenty-nine exceptions were filed on behalf of defendants. It was averred that the contract of sale was not signed in accordance with the requirements of the statute of frauds, in that the authority of the agents to make the sale was not in writing.

There is no attempt in the adjudication to bind Antonetta Risi by the contract of sale signed by "Samuel Knee & Son, Agents." Their authority to act for Anna Knee was confirmed by her mark affixed to the contract.

Other exceptions are directed to the findings of the trial judge that require defendants to convey the interest of which they are seized upon the receipt of the agreed price, less an abatement of one-half for the outstanding half interest they are unable to convey.

In Erwin *v.* Myers, 46 Pa. 96, 106, 107, 108, it was said: "If a vendor cannot make out title to the whole of the subject-matter of the contract, equity

Salaman et al. *v.* Knee et ux.

will not compel the vendee to perform *pro tanto*.   But, says Mr. Sugden (Sugden on Vendors, 193), 'when a vendee seeks a specific execution of an agreement, there is much greater reason for affording the aid of the court to a purchaser when he is desirous of taking the part to which title can be made.' 'And,' he adds, 'a purchaser may, in some cases, insist upon having the part of an estate to which a title is produced, although the vendor could not compel him to purchase it.' So, in Mortlock *v.* Buller, 10 Vesey, 315, Lord Eldon said: 'If a man having partial interest in an estate, chooses to enter into a contract respecting it, and agrees to sell it as his own, it is not competent for him afterwards to say, though he has valuable interests, he has not the entirety, and therefore, a purchaser shall not have the benefit of his contract.   For the purposes of this jurisdiction, the person contracting under those circumstances is bound by the assertion in his contract, and if the vendee chooses to take as much as he can have, he has a right to that and to an abatement.'   In Attorney - General *v.* Day, 1 Vesey, Sr., 218, where tenants in common had contracted for the sale of their estate and one of them died, it was held the survivors could not compel the purchasers to take their shares.   But the converse of the proposition was denied, and it was held the purchaser might compel the survivors to convey their shares, although the contract could not be executed against the heirs of the deceased.   The same doctrine was laid down in Wood *v.* Griffith, 1 Swanston, 54, and in Milligan *v.* Cooke, 16 Vesey, 1, specific performance was decreed upon the bill of a purchaser with compensation for defective title by reduction of the purchase money.   In Hill *v.* Buckley, 17 Vesey, 394, Sir William Grant, M. R., stated the general rule to be, 'where a misrepresentation is made as to quantity, though innocently, the purchaser is entitled to have what the vendor can give, with an abatement out of the purchase money, for so much as the quantity falls short of the representation.'   The same rule of specific performance, *pro tanto*, at the suit of the purchaser, with compensation for deficiency, by abatement of the purchase money, was acted upon in Graham *v.* Oliver, 3 Beabaan, 124; in Wheatley *v.* Slade, 4 Sim. 126, and in Nelthorpe *v.* Holgate, 1 Coll. 203.   It was also asserted unanimously, by the New York Court of Errors and Appeals, in Waters *v.* Travis, 9 Johns. 464.   It is too strongly fortified by authority, as well as founded in reason, to be sucessfully denied. Hence, it has found its way into the best text-books as established doctrine. Adams, in his Treatise on Equity, page 90, lays it down that, in favor of the purchaser the rule in equity is, though he cannot have a partial interest forced upon him, yet if he entered into the contract in ignorance of the vendor's incapacity to give him the whole, and chooses afterwards to take as much as he can get, he has generally, though not universally, a right to insist on that, with compensation for the defect.   He adds, the defect must be one admitting of compensation, and not a mere matter of arbitrary damages.   In Story's Equity, § 779, the general rule is also said to be that the purchaser, if he chooses, is entitled to have the contract specifically performed as far as the vendor can perform it, and to have an abatement out of the purchase money, or compensation for any deficiency in the title, quantity, quality, description or other matters touching the estate; and in Morss *v.* Elmendorf, 11 Paige, 288, the chancellor went so far as to say that in a case where the vendor never had it in his power to perform at all, if the purchaser had filed his bill in good faith, supposing at the time he instituted his suit specific performance could be decreed, he was not prepared to deny that the court would retain his suit, and award the complainant a compensation in damages.   However this may be, there is nothing in the general rule of

which a vendor can complain. It is his own fault if he has assumed obligations which he cannot fulfill. It cannot be inequitable to require him to perform as far as is in his power, and being in a court of equity, a decree that he make compensation for all that he fails to perform is but completing what the court has begun, and preventing a multiplicity of suits. In no just sense can it be said that thus a new contract is made for the parties. The vendor is not compelled to convey anything which he did not agree to convey, and the vendee pays for what he gets, according to the rate established by the agreement."

The cases cited by counsel for defendants in support of the exceptions do not affect this doctrine.

In Safron *v.* McBurney, 269 Pa. 392, the parties stipulated that, in the event of a defect in the title of the vendors, the contract of sale was to be void; but in Medoff *v.* Vandersaal, 271 Pa. 169, it was held that a provision making the contract void cannot be used by the vendor to his advantage if the vendee is willing to accept such title as the vendor can convey without seeking an abatement of the purchase price.

There was no evidence offered by defendants to prove that the value of a one-half interest is less than half the price agreed upon for the entire estate in the written contract of the parties.

It was developed in the course of the trial that Antonetta Risi, who owned a half interest in the properties, had agreed to sell the entire title for $42,500, a price which is $9000 in excess of the amount which defendants were to receive from the plaintiffs. Based upon that valuation, plaintiffs would be entitled to an abatement in the price much greater than that allowed by the adjudication. None of the exceptions filed, either those directed to findings of fact or to the conclusions of law, require a modification of the adjudication or change in the decree which it directs.

Plaintiffs were ignorant of the fact that defendants could convey but a a half interest in the properties. They dealt in good faith with defendants and were ready, willing and able to perform the covenants on their part to be performed. They are entitled to a conveyance of a half interest in the properties, subject to abatement as directed in the adjudication.

Exceptions dismissed.