## Medoff, Appellant, *v.* Vandersaal.

*Vendor and vendee—Failure of marketable title—Waiver of defect by vendee—Contract—Construction—Construed most strongly against grantor—Equity—Specific performance.*

1. A vendee may elect to take a partial performance of a contract by the vendor to convey land; especially is this true where the vendee is willing to take a defective title without seeking abatement of the purchase price.

2. In such case, the vendor will not be permitted to set up his defective title as a defense in a suit for the specific performance of his contract.

3. A contract for the sale of land, like a conveyance, should be construed most strongly against the grantor.

4. In legal contemplation, the vendor is custodian of the title for the benefit of the vendee, while the vendee is trustee for the purchase money for the vendor's benefit.

5. Where a contract for the sale of land provides that the title shall be good and marketable, and that "if, for any reason, a good and marketable title......cannot be made, this agreement shall be null and void and the sum paid on account......shall be returned" by the vendor to the vendee, "in lieu of all claims for damages or otherwise," and the title proves unmarketable, the vendor cannot declare the contract void, but must convey whatever title he has to the vendee, if the latter so elects. Safron v. McBurney, 269 Pa. 392, distinguished.

Mr Justice FRAZER dissented.

Argued March 28, 1921. Appeal, No. 439, March T., 1921, by plaintiff, from decree of C. P. No. 3, Phila. Co., March T., 1920, No. 2968, dismissing bill in equity, in case of David Medoff v. Mary J. S. Vandersaal. Before FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ. Reversed.

Bill in equity for specific performance. Before MC-MICHAEL, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the bill. Plaintiff appealed.

*Error assigned,* among others, was decree, quoting it.

170    MEDOFF, Appellant, *v.* VANDERSAAL.

*M. B. Elwert,* with him *Samuel W. Salus,* for appellant.—A vendor may waive full performance of an agreement for the purchase of land and take the title, the seller can give: Corson v. Mulvany, 49 Pa. 88; Burk's App., 75 Pa. 141.

*Harvey McCourt,* with him *William J. Hughes,* for appellee.—That the chancellor was correct in his finding and dismissal of the bill, is sustained by the following authorities: Williams v. Edwards, 2 Simons 82 et seq.; Schwab v. Baremore, 104 N. W. R. 10; Mackey v. Ames, 16 N. W. R. 541; Gale v. Gale, 2 Cox 145; Herman v. Somers, 158 Pa. 424, 428; Speakman v. Forepaugh, 44 Pa. 363, 371.

OPINION BY MR. JUSTICE KEPHART, July 1, 1921:

Defendant agreed in writing to sell plaintiff three adjoining properties on North 58th Street in the City of Philadelphia, the contract containing the usual clause that title should be good and marketable, such as would be insured by a responsible title company and be conveyed free from all encumbrances, except a mortgage of $2,000 on each property, and existing building restrictions. There was also a provision that if the purchaser should "fail to complete this agreement within the time specified, the same shall, at the option of the party of the first part, become null and void and the sum or sums paid on account shall be retained by the party of the first part as compensation for the damage and expense to which he has been put by reason thereof." Following this was the further clause, upon the construction of which the present dispute depends, that "if for any reason a good and marketable title or such as will be insured aforesaid cannot be made, this agreement shall be null and void and the sum paid on account as above provided shall be returned by the party of the first part to the party of the second part in lieu of all claims for damages or otherwise."

Plaintiff applied to the Land Title & Trust Company of Philadelphia for title insurance and, in the settlement

certificate, that company excepted a mortgage for $1,000, given by William Gresholz, dated August 1, 1871, and "unmarketability of title by reason of same being founded on sale for taxes for year 1888. Outstanding title of William Gresholz as shown by deed February 19, 1861." At the time fixed for settlement, a dispute arose concerning these objections and, after considerable discussion and it appearing defendant was unable to overcome the objection based on the tax sale of the property without notice to William Gresholz, settlement was called off and defendant declined to proceed further in the matter. Plaintiff then filed a bill to compel specific performance, averring his readiness and willingness to carry out his part of the contract. The court below found that plaintiff had fully performed or offered to perform his part and that defendant failed to perform her part, but dismissed the bill for the reason that to compel performance would contravene the express agreement of the parties, from which decree plaintiff appealed.

Defendant averred in her answer and at her request the court found she was ready, willing and able to remove from the settlement certificate the mortgage of $1,000 and eliminate this objection to the title. The finding left in dispute between the parties merely the question of the outstanding title of William Gresholz. Plaintiff offered to accept a conveyance subject to this objection and the question is whether, under the contract, he can thus elect to waive the defect in title and accept the interest defendant is able to convey.

The general rule is well settled, a vendee may elect to take a partial performance of a contract by the vendor; especially is this true where the vendee is willing to take a defective title without seeking abatement in the purchase price. In such case, the vendor will not be permitted to set up his defective title as a defense in an action for the specific performance of his contract: Erwin v. Myers, 46 Pa. 96, 106; Barnes's App., 46 Pa. 350, 356; Corson v. Mulvany, 49 Pa. 88; Napier v. Darlington, 70 Pa. 64; Burk's App., 75 Pa. 141, 145; Farber v.

Blubaker Coal Co., 216 Pa. 209; Latta v. Hax, 219 Pa. 483, 485. This rule is recognized throughout the United States: 25 R. C. L., page 248, section 52; (note) 10 L. R. A. (N. S.) 117; (note) 38 L. R. A. (N. S.) 1195; (note) 22 L. R. A. (N. S.) 595; 39 Cyc. 1522; 36 Cyc. 740. Under the rule, a new contract for the parties is not made, as the vendor is merely doing, within his power, what he agreed to do; nothing is conveyed that was not agreed to. Appellee seeks an exception to the general rule in the contract provision, whereby the agreement was void if a good title could not be conveyed, and contends the vendee is without option, arguing it was to the interest of both parties the agreement should be ended if a defect appeared in the title. No doubt parties may so contract, and, by covenant, neither party be bound by the terms of the agreement if the title is defective; but we do not have such a contract in this case. The contract provides, "if for any reason a good and marketable title or such as will be insured as aforesaid cannot be made, this agreement shall be null and void and the sum paid on account as above provided shall be returned by the party of the first part to the party of the second part in lieu of all claims for damages or otherwise." The vendee is not endeavoring to enforce the contract by way of rescission and damages, hence grantor's protection as to such damages is not in issue. The vendee is seeking performance of as much of the contract as is within the vendor's power, and the vendor demurs to this, averring he cannot be compelled to complete a void contract.

In interpreting such language, important principles of law must be remembered. The contract, like a conveyance, should be construed most strongly against the grantor; courts will be quick to uphold contracts to prevent imposition through fraud, and the term "void" has frequently been held to mean voidable within the option of the party beneficially intended.

In legal contemplation, vendor is custodian of the title for the benefit of vendee, while vendee is trustee of the

purchase money for vendor's benefit; and, upon execution on judgment entered subsequent to the purchase or sale, the purchase money stands for the property. The vendor covenanted to make perfect title, and, if the agreement is to be void because he could not do so, under the facts it was void when it was signed. To hold vendee shall not have the option to take such title as vendor had, is to afford the means whereby a great injustice can be perpetrated on the vendee, clearly against all equitable doctrines. Here, vendor obtained a small part of the purchase price; suppose he had obtained the greater part, and, if the contract was void and no title or interest passed to the vendee, in what position would the vendee be in, if vendor's creditor were to enter a lien against this property? Would the vendee be turned over to an action at law to recover the money thus paid? In the face of insolvency, this would be fruitless in results. If the property suddenly enhances in value, the vendee may be squeezed out of a good bargain. Or again, if property is purchased by agreement, and, as frequently happens, the purchaser, before completing the sale, erects a building, if the contract is absolutely void and the money paid on account returned, is the purchaser to be deprived of the amount expended in the improvement made on a property vendor knew was defective in title? There may be many such titles subject to agreement of sale. Vendee, in good faith, bargains for a title which the seller is supposed to know is good. It is no part of vendee's duty to inquire what title the vendor has when the agreement is made. It is no answer to say, as was done in Erwin v. Myers, supra, "compensation should be made for vendee's loss." We are dealing with an agreement said to be absolutely void. The equities here emphasize the rule that courts will be slow to declare contracts void where harm, wrongfully inflicted, results. Defendant has broken his covenant, is in default, and plaintiff is an innocent party. He took vendor's engagement to make a good and marketable title, and, until notified that the outstanding tax title

could not be secured, he did not know he was operating under a void agreement. The vendor should not have the right to rescind the contract for his own wrongdoing unless the agreement clearly stipulates for it. A provision such as this, is made for the benefit of the vendee, not the vendor. If the vendor cannot make a marketable title, the vendee, if he does not wish to accept such title as can be given, can claim no more than the return of the purchase money, unless further induced by vendor's silence to expend money in improvements. He cannot claim damages for the loss of an advantageous bargain or for expenses incurred in looking into the property. The contract was to be void, that is, nonexistent, so far as the vendee's holding the vendor liable for damages resulting from the loss of a good bargain or otherwise for failure to convey by reason of a defective title. This is the limit to which such a provision should be carried. It certainly should not be made the instrument of oppression.

Safron v. McBurney, 269 Pa. 392, has been called to our attention but it is easily distinguished from the present case, in the first place by the difference in the language of the agreements, but especially by the fact that in the Safron case plaintiff asked for specific performance, with an abatement of purchase money proportioned to the value of an outstanding minor's interest, and this was not in accord with the contract, while here plaintiff is willing to take a defective title without seeking any abatement, as stated above [pages 171-2] in this opinion. See numerous authorities there cited.

We therefore hold a provision like the above was intended for the vendee's benefit, who has an option to take such title as the vendor can convey. This makes it unnecessary to discuss the offer to prove the Real Estate Title Insurance & Trust Company had formerly insured the title and would again indemnify against any loss through it.

The decree of the court below is reversed, the bill is reinstated with directions to the court below to enter a

decree for specific performance, conformable to the prayer of the bill, and payment of such part of the purchase price due at the institution of these proceedings; appellee to pay all costs.

DISSENTING OPINION BY MR. JUSTICE FRAZER:

The majority opinion recognizes the right of the parties to stipulate that an agreement for sale of realty shall be void and unenforceable as to both parties, in the event that a marketable title could not be conveyed, but holds that in this case the parties failed to so provide. With this conclusion, and the reasons given in support of it, I cannot agree. Our duty is to construe contracts parties have entered into, not to make contracts for them because circumstances may arise which might result in their own contract operating inequitably. Thus the majority opinion states, inter alia: "To hold vendee would not have the option to take such title as vendor had, would be to afford the means whereby a great injustice could be perpetrated on the vendee, clearly against all equitable doctrines. Here vendor obtained a small part of the purchase price; suppose he had obtained the greater part, and, if the contract was void and no title or interest passed to the vendee, in what position would the vendee be in, if vendor's creditor were to enter a lien against this property? Would the vendee be turned over to an action at law to recover the money thus paid? In the face of insolvency, this would be fruitless in results. If the property suddenly enhances in value, the vendee may be squeezed out of a good bargain. Or again, if property is purchased by agreement, and, as frequently happens, the purchaser, before completing the sale, erects a building, if the contract is absolutely void and only the money paid on account returned, is the purchaser to be deprived of the money expended in the improvement thus made on a property vendor knew was defective in title?" These matters were proper for consideration by the vendee at the time he made the agreement and while they would be entitled to some weight with the court in ascer-

taining the probable intent of the parties in cases where the language used was of doubtful meaning, they have no place in a case like the present where the language is plain and clear and there is nothing to show one party took advantage of the other. If a man, possessed of all his faculties and without fraud having been practiced upon him, chooses to make a specific contract, it is not for us to say he did not fully appreciate the risks he took or did not adequately protect his property rights. And if, as here, he agrees to terminate all his rights under the contract upon the happening of a named contingency, we have no right to interfere in his behalf and say his contract was an unwise or improvident one.

It is further said defendant has broken her covenant and should not have the right to rescind because of her own wrong unless the agreement clearly stipulates for such action. Conceding that defendant should not be permitted to take advantage of her own wrong, we find absolutely nothing in the record to convict her of wrongdoing. Her mere failure to possess a good title was not a wrong in the sense in which the term is used. She may have been wholly devoid of knowledge of the flaw in her title until the Title Insurance Company discovered it. Furthermore, the agreement does "clearly stipulate" that the right to rescind in event of a defect appearing in the title shall be for the benefit of both parties. What plainer language could be used than that the agreement "shall be null and void"? I can conceive of none. It is said these words meant the contract was to be void only so far as the right to claim damages for loss of the bargain is concerned. It does not say so. On the contrary, the expression is without limitation and refers to the agreement itself and provides further that the return of the purchase money shall be in lieu of all claims for damages "or otherwise." Surely it cannot be charged that one party uses the agreement as an "instrument of oppression" merely because she asks to have the benefit of its plainly expressed terms.

It will be observed the contract provides that, in event of failure of the purchaser to perform within the time stated, the agreement shall, "at the option of the party of the first part [the vendor], become null and void and the sum or sums paid on account shall be retained by the party of the first part as compensation for the damage and expense to which he has been put by reason thereof." A different wording is provided in the succeeding clause relating to the marketability of title, however. Here it is agreed that "if for any reason" a good title "cannot be made" the agreement "shall be null and void" and the sum paid on account shall be returned to the purchaser "in lieu of all claims for damages or otherwise." The provision in the one case that a default by the vendee should entitle the vendor to exercise the option of declaring the agreement void, with the express statement in the other case that a defect in title should render the agreement void, without mention of an option, and, in that event, that the return of the part of the purchase money should be in lieu of all claims for damages "or otherwise," indicates the parties intended the contract to be absolutely terminated upon the happening of the event in question; consequently, I am of opinion the court below correctly concluded, as the parties had fixed and limited their rights and liabilities, a court of equity would not make a new agreement for them: Williams v. Edwards, 2 Simons 82; Mackey v. Ames, 31 Minn. 103; Schwab v. Baremore, 104 N. W. 10.

Safron v. McBurney, 269 Pa. 392, 394, recently decided by this court, was a bill to compel specific performance of a contract for the sale of real estate. We there said, adopting the opinion of the court below: "The defendants agreed only to convey the lot to Safron's assignor, Dobkin, if they could, and expressly stipulated that, if they could not convey what they had agreed to sell, they should be called on for nothing except the return of the hand money. In view of this stipulation a demurrer must be sustained and the bill dismissed. The court cannot close its eyes to any essential term of a contract

that it is asked to enforce." This being the expressed ground of the decision, the case is directly in point and should be of controlling authority in the appeal now before us.

The reasoning of the decisions in the above cases seems sound and logical. In Williams v. Edwards the parties agreed that if, in the opinion of a named attorney-at-law, "a marketable title could not be made by the time appointed for the completion of the purchase, the agreement should be void and delivered up to be cancelled." The court there said: "This particular clause in the agreement I must take to be the contract of both the vendor and the purchaser. They might both think it would be equally to their interest that the agreement should be put an end to if the counsel of the purchaser should be of opinion that a marketable title could not be made. There appears to be nothing unreasonable in that. There might be circumstances which might make it very proper for both parties to insert that term. And as it was the contract of both parties, this court cannot make a new contract for them." In Schwab v. Baremore, conveyance of a good title was prevented by the refusal of a vendor's wife to join in the deed, she not being a party to the contract of sale. The agreement provided that if the title to the premises "is not good and cannot be made good this agreement shall be void and the above $50 refunded." The court recognized the general rule that where a purchaser is unable to convey title owing to his wife's refusal to join in the conveyance, he may be compelled, at the election of the purchaser, to perform to the extent of his power by conveying his own interest, and stated: "That rule can have no application to a case like that at bar, where the contract expressly provides the remedy and rights of the parties in case of the inability of the vendor to perform." In Mackey v. Ames, the agreement provided that if a title to the premises "is not good and cannot be made good within sixty days from the date hereof, this agreement shall be void and the above $200 refunded." This was also construed as an

absolute agreement that the contract should be void and "not a provision that the plaintiffs may, at their option or election, abandon or dissolve the agreement, but that it shall, upon the occurrence of the specified contingency, become void and thereafter no longer binding on either party." In the above cases the general rule giving the purchaser the right of his option to accept such title as the vendor can convey is recognized, and the distinction is based solely upon the language of the contract wherein a contrary intention was shown. A careful examination of the great body of law on this subject has failed to find a case to the contrary.

It must be conceded that the parties did not contemplate that the vendor should have it within her power to terminate the contract and avoid liability because of a defect in title which was within her power to remove and thus take advantage of her own wrong, and, accordingly, the clause "if for any reason" must mean an adequate reason beyond the power of the vendor to overcome. Recognizing this principle, the court below found it was the duty of defendant to clear away encumbrances, if possible. Plaintiff offered to prove that the Real Estate Title Insurance & Trust Company had formerly insured the title and would have given the Land Title Company a letter indemnifying it against loss it might sustain by issuing a policy to plaintiff free from the objections in question, and also that the Land Title Company would have accepted such letter and issued a clear policy. Had this offer been supported by competent proof it might have established defendant's ability to convey a good title free from the objection in question, but as to this we need express no opinion. The objection to the evidence was properly sustained for reasons stated by the court below and this left plaintiff without competent evidence to overcome the effect of the defect in the title, as it appeared in the settlement certificate, or to show that defendant could have removed the objection had she endeavored in good faith so to do.

I would affirm the decree of the court below.